# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of CONTRACTOR'S EQUIPMENT SUPPLY CO., an Idaho corporation, doing business as CESCO,<br><br>Use-Plaintiff,<br><br>vs.<br><br>TK CONSTRUCTION, US, LLC, a Colorado limited liability company; AMY FISCHER, an individual; NORTH AMERICAN SPECIALTY INSURANCE COMPANY, a New Hampshire corporation; AMERICAN MINING INSURANCE COMPANY, an Iowa corporation; and ALTERRA AMERICA INSURANCE COMPANY, a Delaware corporation,<br><br>Defendants. | Case No.: 1:14-cv-00134-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: ALTERRA'S MOTION FOR SUMMARY JUDGMENT (DKT. 75)** |

Pending for decision is Defendant Alterra America Insurance Company's ("Alterra") Motion for Summary Judgment (Dkt. 75). Having heard oral argument and being otherwise advised, the Court rules as follows.

## FACTUAL BACKGROUND[1]

TK Construction US, LLC ("TK") contracted with the United States of America for TK to furnish labor, materials and equipment, and perform certain work required to complete a highway improvement project in Boise County, Idaho. (Second Amend. Compl. (Dkt. 47) ¶ 10.)

---

[1] The factual background is drawn from the parties' statements of facts. *See* Dkt. 75-2, Dkt. 78-1.

**MEMORANDUM DECISION AND ORDER - 1**

TK then made rental contracts with CESCO for a John Deere 300D Articulated Haul Truck (the "Truck") and a John Deere 350G Excavator (the "Excavator") to use on the highway project. *Id*. ¶ 13.

Alterra issued an insurance policy to TK ("the Policy"). The Truck and the Excavator were listed on a schedule of insured property. The Policy excluded losses "caused by" mechanical breakdown, with language providing that "'We' do not pay for loss caused by any mechanical, structural, or electrical breakdown or malfunction including a breakdown or malfunction resulting from a structural, mechanical, or reconditioning process." (Dkt. 75-3 at p. 21.) Elsewhere the Policy described "what must be done in case of a loss," which included giving prompt notice of the loss with a description of the property; exhibiting the damaged and undamaged property as often as Alterra reasonably requests and allowing Alterra to inspect the property; and not making any voluntarily payments or incurring any other expenses except as respects protecting the property from further damage. (Dkt. 75-3 at pp. 35-37, 55.)

Under the Policy, payments for "your losses" were to be made to "you" (defined as the "Insured," which was TK) "unless another loss payee is named in the policy." (Dkt. 75-3, p. 25.) "Losses to property of others" were to be paid to "'you' on behalf of the owner; or the owner." (*Id*.) Policy Endorsement No. 4 added the Truck and the Excavator to the "Schedule of Coverages" and named CESCO as a Loss Payee. (*Id*. at p. 55.) In pertinent part, Endorsement 4 provided: "We will pay 'loss' to you and: Cesco Rentals." (*Id*.)

On or about May 8, 2013, the Truck's transmission was damaged. CESCO and Pacific Torque removed, repaired, and replaced the transmission. The "Service Estimate" document created in that process states that CESCO's mechanic "went out on a no movement call, found

**MEMORANDUM DECISION AND ORDER - 2**

truck loaded, transmission locked in forward gear, transmission oil looked and smelled burnt . . ." CESCO's shop foreman, Barry Smith, said TK called him to say that the Truck would not move. Smith called that a "transmission failure." (Pl.'s Statement of Facts, Dkt. 75-2, ¶¶ 5-10.)

On July 18, 2013, Alterra received its first notice of the loss related to the Truck ("the Truck claim"). Nearly a month later, on August 16, 2013, Alterra hired an independent investigator to perform an investigation on the truck and its transmission. Alterra made a decision to deny the Truck claim based upon that investigation. (Def.'s Statement of Facts, Dkt. 78-1, ¶ 2.) On September 18, 2013, the outside adjusting firm assigned by Alterra to adjust the claim sent a letter to TK denying the Truck claim because it fell within the mechanical breakdown exclusion in the Policy.[2] (Pl.'s Facts ¶ 11.)

On or about October 15, 2013, the Excavator was damaged when it was struck by falling rock. Alterra received notice of the loss in December 2013 ("the Excavator claim"). On April 11, 2014, the Excavator claim was approved and Debra Thompson, an employee of Markel Service, Inc. (Alterra's parent company), submitted a Payment Request Form, requesting that a check be issued to CESCO and mailed to TK. On or about April 14, 2014, Alterra mailed a check for the Excavator claim to TK, made out to TK only. On April 20, 2015, subsequent to the filing of this lawsuit, a separate payment was made to CESCO, in the amount of the Excavator claim, minus the deductible, plus interest at the statutory rate. (Pl.'s Facts ¶¶ 12-16.)

---

[2] CESCO disputes that the cause of the transmission failure was "mechanical breakdown" and asserts that the cause of the loss was TK's negligence.

**MEMORANDUM DECISION AND ORDER - 3**

# SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support

the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

## DISCUSSION

### A. The Truck Claim

#### 1. Mechanical Breakdown Exclusion

The parties disagree on whether the Truck claim is covered by the Policy. Alterra argues that the Truck claim falls within the "mechanical breakdown" exclusion of the Policy and is not covered. Alterra contends that a "mechanical breakdown" occurred, and coverage is not available, because the transmission seized up and the truck would no longer run; *i.e.*, in everyday language, the Truck "broke down." (Def.'s Mem. (Dkt. 75-1), p. 6.) CESCO contends that any mechanical breakdown occurred because of a TK employee's negligence in operating and maintaining the Truck, which negligence ultimately led to the loss and the damage it caused and that such a scenario is a covered loss under the Policy. (Pl.'s Mem. (Dkt. 78), p. 3.) This argument stems from CESCO's characterization of the Alterra policy as an "all-risk" policy, and that unless a risk is specifically excluded, the loss is covered.[3] Here, CESCO

---

[3] An all-risk insurance policy extends coverage to risks not generally covered under other insurance policies. *See Associated Aviation Underwriters v. George Koch Sons, Inc.*, 712 N.E.2d 1071, 1073 (Ind. Ct. App. 1999)

**MEMORANDUM DECISION AND ORDER - 5**

argues, the transmission was damaged due because of the negligence of a TK employee; hence, the loss is covered. *Id*.

Insurance policies are contracts between the insurer and the insured. *See Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 392 (Idaho 2010) (citing *Hall v. Farmers Alliance Mut. Ins. Co.*, 179 P.3d 276, 280 (Idaho 2008)). Whether an insurance policy is ambiguous is a question of law over which the court exercises free review. *See Armstrong v. Farmers Ins. Co. of Idaho*, 205 P.3d 1203, 1205 (Idaho 2009) (citing *Purvis v. Progressive Cas. Ins. Co.*, 127 P.3d 116, 119 (Idaho 2005)) (citation omitted). If the court finds the policy language to be unambiguous, the court is to construe the policy as written. "The court by construction cannot create a liability not assumed by the insurer nor make a new contract for the parties, or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability." *Id*. "Unless contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the parties." *Id*. (quoting *Howard v. Ore. Mut. Ins. Co.*, 46 P.3d 510, 513 (Idaho 2002)). Where there is an ambiguity in an insurance contract, special rules of construction apply to protect the insured. *See id*. at 1206 (citing *Hall*, 179 P.3d at 281).

In deciding whether a particular provision is ambiguous, the provision must be read within the context in which it occurs in the policy. *See Armstrong*, 205 P.3d at 1206 (citing *Purvis*, 127 P.3d at 119). An insurance policy provision is ambiguous if "it is reasonably subject to conflicting interpretations." *North Pac. Ins. Co. v. Mai*, 939 P.2d 570, 572 (Idaho 1997). Because insurance contracts are adhesion contracts that are not typically subject to negotiation

between the parties, any ambiguity that exists in the contract is construed most strongly against the insurer and in favor of the insured. *See Armstrong*, 205 P.3d at 1206 (citing *Arreguin v. Farmers Ins. Co.*, 180 P.3d 498, 500 (Idaho 2008)). Further, insurance contracts are to be construed "in a manner which will provide full coverage for the indicated risks rather than to narrow its protection." *Smith v. O/P Transp.*, 918 P.2d 281, 284 (Idaho 1996). "The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage." *Arreguin*, 180 P.3d at 500.

Alterra argues that the mechanical breakdown exclusion is unambiguous and commonly understood to describe an occurrence where a vehicle stops running. Here, the truck stopped working and therefore, Alterra argues, it was a "mechanical breakdown" and excluded by the Policy. (Def.'s Mem., p. 6.) CESCO contends that the mechanical breakdown exclusion is ambiguous and should be construed against the insurance company. (Pl.'s Mem., p. 3.)

The Court finds that the exclusion does not unambiguously exclude coverage for losses caused by covered perils (e.g., negligence) that lead to the fact of a mechanical breakdown, as distinct from a loss caused by a mechanical breakdown in and of itself.

There is no decision of the Idaho appellate courts that has been relied upon by the parties, or that the Court has identified, on the specific issue here. However, decisions from other jurisdictions support CESCO's argument that a mechanical breakdown exclusion will apply only where the damage is caused by mechanical defects and not by an insured risk, such as negligence. In an Indiana case, an all-risk policy covered "any physical damage loss" to the insured aircraft. The policy excluded losses for "physical damage . . . caused by and confined to . . . mechanical or electrical breakdown or failure of equipment . . . ." *Associated Aviation*

**MEMORANDUM DECISION AND ORDER - 7**

*Underwriters v. Koch Sons*, 712 N.E.2d 1071, 1074 (Ind. Ct. App. 1999). The insurer denied a claim for damage to an engine caused by a third party who improperly installed a seal ring during maintenance, on the basis that such a claim was barred by the "breakdown" exclusion. *Id*. Applying a proximate cause analysis, the court ruled that the exclusion did not apply, reasoning that "mechanical breakdown . . . can either be the *cause* of a loss or the *effect* of a loss . . .although mechanical breakdown may have occurred as a result of the negligence" but that in this instance "it was the negligence (a covered peril) which was the cause of the loss. . . ." *Id*. at 1076. When "an insured risk itself sets into operation a chain of causation in which the last step may have been an excepted risk," the court said, "the excepted risk will not defeat recovery." *Id*. at 1075 (internal citation and quotation omitted).

In a New Mexico case, a policy "insure[d] against all risks" with the exception of "loss or damage due and confined to . . . mechanical breakdown or failure . . . ." *Rust Tractor, Co. v. Consolidated Constructors, Inc.*, 526 P.2d 800, 802 (Ct. App. N.M. 1974). In *Rust Tractor*, a failure to maintain necessary oil levels caused a mechanical breakdown of a construction loader. *Id*. The court disagreed with the insurer who contended that a claim connected to the breakdown was excluded, holding that the " negligent failure to maintain an oil level is an 'external cause' and is insured against. That negligent failure operated to subject the loader to mechanical breakdown which was excluded. The loss was covered." *Id*. *See also Connie's Construction v. Continental Western Ins. Co.*, 227 N.W.2d 204 (Iowa 1975); *Union Savings Bank v. Allstate Indemnity Co*, 830 F. Supp. 2d 623 (S.D. Ind. 2011); *Cornell v. Grinnell Mutual Reinsurance Co.* 723 N.W.2d 453 (Iowa Ct. App. 2006); *Caccioppo v. United Servs. Automobile Ass'n*, 479 Misc.2d 698 (N.Y. Civ. Ct. 1984).

**MEMORANDUM DECISION AND ORDER - 8**

The Court agrees with the reasoning of these courts, which have held that when the mechanical breakdown is the *result* of a negligent act, which otherwise is a covered peril, rather than the cause of a loss, then a mechanical breakdown exclusion does not bar coverage. For purposes of this motion, Alterra does not contest (but also does not admit) that negligence of the operator of the Truck led the transmission to fail.[4] In an all-risk policy, such as the Alterra policy, to read the mechanical breakdown as does Alterra would eliminate coverage in many situations that would otherwise be covered in all-risk policy. This would be contrary to Idaho law that insurance contracts are to be strictly construed against the insurer, particularly when they are ambiguous. *Bonner County v. Panhandle Rodeo Ass'n*, 620 P.2d 1102 (Idaho 1980). The Policy does not exclude coverage for negligence which "sets into motion excluded perils," such as mechanical breakdown. *See Associated Aviation Underwriters*, 712 N.E.2d at 1076. The Court denies Alterra's motion for summary judgment on the mechanical breakdown exclusion.

### 2. Other Policy Provisions

In the alternative, Alterra contends that CESCO's claims fail because CESCO did not comply with the "What Must Be Done in Case of Loss" section of the Policy. Specifically, Alterra argues that CESCO did not "exhibit" the damaged property for Alterra to inspect because the transmission was removed, repaired, and replaced before Alterra received notice of the claim.

---

[4] Whether negligence resulted in the failed transmission is a question that will be left to trial.

**MEMORANDUM DECISION AND ORDER - 9**

Alterra also argues that CESCO voluntarily paid to repair the truck before Alterra received notice of the loss, thus violating the "no voluntary payments" provision.[5]

First, CESCO's claim is not barred by a failure to "exhibit" the damaged property. "When [an] insurance company proceeds with its own investigation and makes a determination as to liability and denies coverage as a result of its own investigation and determination, it is deemed to have waived its right to demand further proof of loss." *Tippets v. Gem State Mutual Life Assoc., Inc.*, 416 P.2d 38, 41 (Idaho 1966). After it received notice of the claim, Alterra initiated and completed an independent investigation into the loss and then denied coverage based on that investigation. Further, Alterra has not argued nor is there evidence of any prejudice to Alterra stemming from any alleged failure by TK or CESCO to exhibit the Truck at an earlier time. Alterra did inspect the damaged property. There was no attempt to hide the damaged property, or to prevent Alterra from conducting its investigation. *See Leach v. Farmer's Automobile Ins. Exch.*, 213 P.2d 920, 923 (Idaho 1950) ("Violations of conditions by the insured will not release the insurer unless it is prejudiced by the violation."); *State of Idaho v. Bunker Hill Co.*, 647 F. Supp. 1064, 1075 (D. Idaho 1986) ("[S]ubstantial performance by the insured is all that is required to satisfy these conditions . . . .").

Second, as to the argument regarding "no voluntary payments," the Court agrees with the reasoning in *Safeco Ins. Co. of Illinois v. Klein*, 2012 WL 4754557 (D. Idaho 2012), in which the court addressed a voluntary payment clause and held that, at a minimum, an insurer must demonstrate that the purpose of the nonvoluntary payment clause was undermined in order to bar

---

[5] Alterra no longer relies upon its position on the "prompt notice," as acknowledged by counsel during oral argument.

coverage. *Id*. at *3. That case involved a duty to defend and the court recognized that "once an insurer has agreed to provide a defense, an insured cannot settle the matter without notice to the insurer, and thereby strip the insurer of its ability to defend." *Id*. No such purpose of the nonvoluntary payment clause in the Policy was undermined here, nor has Alterra argued such. Indeed, the purpose of repairing the transmission in the Truck was to get it back into service. The instant situation is vastly different than settling a lawsuit and then seeking indemnification from the insured, thereby "depriving [the insurer] of its contractual right to control the settlement process" and undermining the purpose of the nonvoluntary payment clause. *Id*. at *4.

The Court denies Alterra's motion for summary judgment on the grounds that CESCO failed to comply with these provisions.

**B.     The Excavator Claim**

CESCO has been paid on its Excavator Claim. However, CESCO seeks attorney fees in regard to that claim under Idaho Code § 41-1830, which provides:

> Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever that fails to pay a person entitled thereto within thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, . . . shall in any action thereafter commenced against the insurer in any court in this state, . . . for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action or arbitration.

I.C. § 41-1839(1). Alterra argues that even if its first check was written to TK only, payment was nonetheless (1) paid within 30 days of proof of loss; and (2) payment complied with the Policy which required that payment for claims involving rented property be sent either to the insured *or* the owner of the property.

**MEMORANDUM DECISION AND ORDER - 11**

The relevant portion of the Policy is Endorsement No. 4 which added CESCO as a Loss Payee and states: "We will pay 'loss' to you and: CESCO Rentals."  (Dkt. 75-3, p. 55.)  However, Alterra made payment only to TK, not to TK *and* CESCO.  It was not until after this lawsuit began that Alterra made a separate payment to CESCO, but that payment was made long after the 30 days allotted in the statute.  Hence, even though there was a payment arguably made within the 30 day window of the statute, it was not payment in the manner required by the language of Endorsement No. 4.

Alterra made a payment that arguably was within the statutory period, but it made the payment in the wrong fashion under the Policy and did not include CESCO.  If TK were seeking recovery for fees under the statute, Alterra's argument would have some strength but the argument carries no weight as to the payment made to CESCO.  Under the terms of the Policy and Idaho Code § 41-1830, CESCO was entitled to payment on the Excavator claim within 30 days.  Payment was not made in that time period.  Therefore, Alterra is not entitled to summary judgment on CESCO's claim for attorney fees.

**ORDER**

**IT IS THEREFORE ORDERED** that Defendant Alterra America Insurance Company's Motion for Summary Judgment (Dkt. 75) is DENIED.

DATED:  **June 28, 2017**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge